**AFFIRMED; Opinion Filed August 23, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00906-CV

### ALTESSE HEALTHCARE SOLUTIONS, INC. AND SHAWNA BOUDREAUX, Appellants
### V.
### ALLEN WILSON AND BECKY WILSON, Appellees

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-04978-2014**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Evans, and Brown
Opinion by Justice Evans

Altesse Healthcare Solutions, Inc. and Shawna Boudreaux[1] (collectively Altesse unless context requires otherwise) appeal from the trial court's adverse final judgment awarding Allen Wilson and Becky Wilson $897,937.51 plus attorney's fees. In its first issue, Altesse challenges the trial court's imposition of "death penalty" sanctions for violating a temporary restraining order as unjust and a violation of his due process rights. In issues two through six, Altesse challenges the trial court's underlying temporary restraining order arguing that (1) the order did not maintain the status quo, (2) the Wilsons failed to prove probable injury, (3) the Wilsons failed to satisfy a condition precedent to filing suit, (4) the Wilson's suit should have been

---

[1] Shawna Boudreaux is the president of Altesse.

brought in federal court as a compulsory counterclaim to the suit filed by Altesse, and (5) the trial court erred in having the TRO hearing off the record. In two additional issues, Altesse contends that it substantially complied with the TRO and any noncompliance was not willfully done. The Wilsons have not filed a brief in this appeal. For the reasons that follow, we affirm the trial court's judgment.

## BACKGROUND

This case arises from a dispute involving the purchase and sale of ABACAW Enterprises, Inc. doing business as Golden Pond Home Healthcare. At all relevant times, Golden Pond provided home healthcare services to mainly Medicare patients. Pursuant to a June 21, 2014 agreement, Altesse agreed to purchase the company from the Wilsons for the sum of $800,000 to be paid in installments beginning October 15, 2014. After the agreement was signed, Altesse began operating the company. Altesse failed to pay the first $66,000 installment due on October 15, 2014 and, instead, filed suit in federal court against the Wilsons.[2] The Wilsons filed a petition in state court asserting claims for breach of contract, fraud, and declaratory judgment with an application for a temporary restraining order and injunctive relief.

On December 17, 2016, attorneys for both parties appeared in the trial court's chambers to discuss the TRO application. The trial court signed the TRO and scheduled a hearing for the temporary injunction five days later, on December 22, 2014. Among other things, the TRO required Altesse to return to the Wilsons within three days: the company assets, access to the business and all records, administrator access and password information and business documents reflecting the company's current patients, employees and patient schedules. No evidentiary hearing was held or record made of the December 17 proceedings on the TRO, although both parties' attorneys were present when it was signed. On December 19, Altesse filed an

---

[2] According to Altesse, the federal suit is scheduled for trial in 2016.

–2–

emergency motion to set aside the TRO but the motion was never set for a hearing. One hour later, Altesse filed a notice of removal to federal court and where they sought to consolidate it with its previously-filed federal lawsuit. Consequently, a hearing was never held on the application for a temporary injunction. On January 30, 2015, the federal court ultimately granted the Wilsons' request to return the case to state court.

On March 19, 2015, the Wilsons filed a motion for contempt and sanctions against Altesse alleging it violated various provisions of the trial court's TRO. After an evidentiary hearing, the trial court granted the motion and punished Altesse for contempt of court by "impos[ing] a sanction of $897,937.51 and further ordered that "death penalty sanctions should be imposed against [Altesse] as to [its] liability for all of the Wilsons' causes of action and claims plead in their Original Petition, and persevere [sic] the amount of damages for trial." The Wilsons then requested and received a final judgment against Altesse for $897,937.51, attorney's fees for post-judgment discovery and obtaining and enforcing the judgment, plus contingent appellate attorney's fees. Altesse filed this appeal.

## ANALYSIS

### A.    Death Penalty Sanctions

In its first issue, Altesse challenges the trial court's grant of death penalty sanctions. Altesse contends the trial court's imposition of death penalty sanctions violated its state and federal constitutional due process rights and was not "just" as required by the standard set forth by the Texas supreme court in *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913 (Tex. 1991) (orig. proceeding) and its progeny. Altesse generally contends that the Wilsons failed to prove a direct relationship between the sanction imposed and the offensive conduct. It also asserts that the sanction was more severe than necessary because Altesse ultimately turned

over the company assets to the Wilsons.  Finally, it contends its claims and defenses did not lack merit.

We review a trial judge's sanction award for an abuse of discretion, examining the entire record to determine whether the trial court acted arbitrarily and unreasonably, without reference to guiding principles, or misapplied the law to the established facts of the case.  *See Randolph v. Walker,* 29 S.W.3d 271, 276 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

"Two factors mark the bounds of the trial court's discretion in order for sanctions to be just:  first, a direct relationship between the offensive conduct and the sanction imposed must exist; and second, the sanction imposed must not be excessive."  *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992) (orig. proceeding).  Additionally, there are constitutional due process limitations preventing the imposition of death penalty sanctions unless the offensive conduct justifies a presumption that the offending party's claims or defenses lack merit.  *See TransAmerican*, 811 S.W.2d at 917–18.

In its April 13 order granting contempt and sanctions, the trial court made the following findings:

The Court finds that [Altesse] violated the Court's temporary restraining order issued on December 17, 2014 by:

* * *

(2) Transferring and depleting monies of ABACAW. Specifically, transferring $15,150 (in five different transfers) from ABACAW's bank account to another, unknown Compass Bank account (Account *2407), and writing and negotiating 21 checks totaling $17,787.51;

(3) Failing to comply with any of the mandatory injunction part of the order. Specifically, failing to provide within three days, the required assets, business records and documents, password information, and all other course of business documents of ABACAW;

(4) Failing to return information vital to the operation of ABACAW and to comply with Medicare regulations. Specifically, failing to provide 376 incomplete visit notes; 64 orders that show as being sent to the physician but that were never marked returned with a signature, scanned into the computer, or returned by hard

–4–

copy; and 137 orders that are marked returned with physician's signature but are not scanned into AXXESS nor have they been returned to Allen Wilson and/or Becky Wilson by hard copy; and

(5) Failing to return the following assets of ABACAW: four Dell computers; nine computer monitors; laminating machine; ice box; two coffee pots; two microwaves; 4 n-ratio (PT/INR machine); Alere PT/INR machine bag; and 3 testing strips.

With respect to the imposition of death penalty sanctions, the trial court found:

The court finds that death penalty sanctions in this case are necessary and just because:

(1) The sanction is directly related to the Defendants' offensive conduct because the Defendants devastated the value of ABACAW (the order was meant to retain this value so that the parties would have something left to fight over), and ruined the Wilsons' only chance to recover ABACAW's business at the time the order was granted (by violating the order and avoiding the temporary injunction hearing in bad faith).

(2) The sanction is completely necessary to promote full compliance with the orders and authority of this Court. Not providing this sanction would allow the Defendants to benefit from their actions, and have no repercussions that would cause them, or other similar parties like them in the future, to obey the authority of this Court.

(3) No other lesser sanction would be adequate punishment for the violations committed by the Defendants. The complete destruction of the business cannot be properly punished by the awarding of only attorneys' fees or other similar, lesser sanctions.

(4) Defendants' egregious conduct justifies the presumption that its claims or defenses lack merit.

At the contempt and sanctions hearing, there was testimony from Allen Wilson that when the TRO was entered, the company had 55 patients. However, the day the business was finally returned to the Wilsons, the company had only three active patients. Wilson testified that he received transfer statements from 20 patients that were going to Trinicare Home Health, Inc., a home health company controlled by Boudreaux and doing business under the assumed name of

Altesse Home Health.[3]  Moreover, after the TRO was entered, Altesse was still filing claims requesting payment from Medicare.  According to Wilson, he did not get access to the software allowing him to see patient schedules until after January 1, 2015.   Wilson further testified that they still had not received several assets of the business including some computers and furniture.  In addition, he stated money that was owed to the IRS and should have been paid by Altesse had not been paid.  According to Wilson, there was a $50,000 letter of credit that "has never shown up in the bank account" and only $4,000 had been returned.  Wilson testified that he would never get the business back to where it was when he sold it to Altesse.

At the hearing, Boudreaux admitted that she read and understood the TRO.  Nevertheless, from December 17 to December 31, 2014 she held herself or Altesse out as the owner or agent of ABACAW, she used ABACAW's medicare provider number and national provider number, Medicare license number, and continued to have contact with ABACAW's patients and employees and independent contractors.  She also admitted to depleting or transferring ABACAW assets from December 17 through December 31, 2014.  Such actions were contrary to the provisions of the TRO.

Boudreaux further admitted that she did not return administrator access and password information to the Wilsons within three days as specified in the TRO.  Boudreaux stated she complied with the order to the best of her ability.  She noted that some patients were on chemotherapy infusions, were acute patients and had wound care, and "It's not something that you can just hand over." She testified that this was a "transition type situation" and "the State of Texas requires a thirty-day notice when you do changes any more of [sic] fifty percent stock." When asked if it would have been a good result if she had simply turned everything over to the Wilsons on December 17, she replied "[a]bsolutely not" because of "patient safety, patient

_____

[3] The assumed name certificate in evidence was filed January 6, 2015.

endangerment, patient rights, nursing licenses." Boudreaux agreed on direct examination that it would be impossible for her not to hold herself out as ABACAW after December 17. She felt she substantially complied with the TRO because "there was nothing else she could have done." She testified that the Wilsons "hadn't done any infusion patients . . . there was no way that I could just trust that these patients were going to be able to continue to be taken care of." Boudreaux also stated that she wanted to make sure the nurses would be paid during the interim period. Boudreaux resigned from ABACAW on December 29. According to Boudreaux, none of the nurses that were working for ABACAW stayed with the company after it was returned to the Wilsons and all but one (a therapist) ended up going to work for Altesse.

After reviewing the evidence, we conclude the sanctions were directly related to Altesse's offensive conduct. As noted by the trial court, Altesses's actions in failing to comply with the TRO resulted in destroying the value of the company over which the lawsuit was based. In essence, Altesse took over running the company and then failed to make the scheduled payments when due, leaving the Wilsons without the company or payment. After the trial court ordered Altesse to return the company to the Wilsons, Altesse delayed and by the time it returned the necessary assets to run the business, there was little left to run. The trial court even observed that Boudreaux "pretty much admitted to every violation." Regarding whether the sanctions were excessive, Altesse effectively reduced the entire value of the company to next to nothing and the parties had recently agreed that value was worth the amount of the sanction. Altesse had no evidence of any significant value left in the company that refuted the Wilsons' evidence that there was no value to what they received back from Altesse. Moreover, in light of Altesse's deliberate conduct we conclude the sanctions were not excessive.

We next address Altesse's assertion that the trial court did not consider lesser sanctions. As set forth in the order, the trial court determined that no lesser sanction, such as attorney's

fees, would be adequate in this case because Altesse's noncompliance resulted in the destruction of the business that was the very subject of the lawsuit. The record shows that the trial court understood the severity of the sanctions requested and while not specifically mentioning that he considered lesser sanctions, noted the death penalty sanctions seemed extreme and were "like a nuclear option here." But, as noted by the Wilsons' attorney, the existing problem is that "the corpus of the lawsuit is gone. Poof. We don't have any recourse." Based on the record before us, we cannot conclude that the trial court erred in determining that a lesser sanction would have been inadequate in these circumstances.

Finally, we address Altesse's federal and state due process complaints. Altesse argues the trial court erred in concluding that its claims or defenses lacked merit because it complied with the TRO the best it could in balancing patient safety and nursing license issues. It also asserts it would have been illegal under the Board of Nurses Code for Altesse to abandon the patients under their control as the TRO required. These arguments however, do not address the merits of Altesse's claims and defenses with respect to the Wilson's underlying lawsuit which is the relevant inquiry for a due process analysis. *See TransAmerican*, 811 S.W.2d at 917–18. Instead, Altesse presents defenses to Altesse's non-compliance with the TRO and provides no explanation or discussion as to how they are pertinent to its due process complaint. The appellate rules require a brief to contain a clear and concise argument for the contentions made with appropriate citations to the authorities and the record. *See* TEX. R. APP. P. 38.1(i). We have no duty or even right to perform an independent review of the record and applicable law to determine whether there was error. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.). Accordingly, Altesse has waived his due process complaint by inadequate briefing. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*,

881 S.W.2d 279, 284–85 (Tex. 1994).[4]  Nevertheless, after a review of the entire record we cannot conclude Altesse's conduct did not justify a presumption that its claims and defenses in the underlying lawsuit lacked merit.  *See TransAmerican*, 811 S.W.2d at 917–18.

## B.    Contempt Finding

In issues seven and eight, Altesse argues that it should not have been held in contempt because it substantially complied with the TRO and any non-compliance with the TRO was the result of its inability to comply.  We review a trial court's decision to hold a party in contempt for an abuse of discretion.  *See In re Reece*, 341 S.W.3d 360, 369 (Tex. 2011).  In its April 13 order, the trial court stated:

> The Court finds that [Altesse] violated the Court's temporary restraining order issued on December 17, 2014 by:
>
> * * *
>
> (2) Transferring and depleting monies of ABACAW. Specifically, transferring $15,150 (in five different transfers) from ABACAW's bank account to another, unknown Compass Bank account (Account *2407), and writing and negotiating 21 checks totaling $17,787.51;
>
> (3) Failing to comply with any of the mandatory injunction part of the order. Specifically, failing to provide within three days, the required assets, business records and documents, password information, and all other course of business documents of ABACAW;
>
> (4) Failing to return information vital to the operation of ABACAW and to comply with Medicare regulations. Specifically, failing to provide 376 incomplete visit notes; 64 orders that show as being sent to the physician but that were never marked returned with a signature, scanned into the computer, or returned by hard copy; and 137 orders that are marked returned with physician's signature but are not scanned into AXXESS nor have they been returned to Allen Wilson and/or Becky Wilson by hard copy; and

---

[4] Under this issue, Altesse also makes conclusory arguments without any legal analysis or discussion that (1) the death penalty sanctions violated its federal due process rights because no hearing was conducted before the TRO was signed and (2) the death penalty sanctions constituted an improper "takings" under article 1 section 19 of the Texas Constitution.   These contentions are likewise waived due to inadequate briefing.  *See Fredonia State Bank*, 881 S.W.2d at 284–85.

–9–

(5) Failing to return the following assets of ABACAW: four Dell computers; nine computer monitors; laminating machine; ice box; two coffee pots; two microwaves; 4 n-ratio (PT/INR machine); Alere PT/INR machine bag; and 3 testing strips.

Altesse did not request, and the trial court did not make findings of fact with respect to whether Altesse substantially complied with the TRO or whether it was unable to comply. Here, we presume the trial court rejected Altesse's defenses of inability to comply and substantial compliance. The evidence was conflicting on these issues and the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See In re C.G.*, No. 04-13-00749-CV, 2014 WL 3928612 at *10 (Tex. App.—San Antonio August 13, 2014, no pet.) (mem. op.). Boudreaux explained she violated the court's order because it was impossible to comply and was concerned with the patient's safety. However the extent of her violations along with testimony from Wilson that he was capable of taking care of the patients and the employees had the company been turned over in accordance with the TRO supported both the conclusion that Altesse did not substantially comply with the TRO although capable of doing so and that Altesse was able to comply. Based on our review of the record, Altesse has not established the trial court abused its discretion in holding Altesse in contempt. Accordingly, we resolve Altesse's seventh and eighth issues against it.

## C.    Challenges to TRO

In issues two through five, Altesse challenges the trial court's underlying TRO. Specifically, Altesse asserts that the trial court erred in rendering the TRO because: (1) the TRO failed to maintain the status quo between the parties, (2) the Wilsons failed to prove probable injury, (3) the Wilsons failed to satisfy a condition precedent necessary to filing suit, (4) the Wilsons' lawsuit was a compulsory counterclaim to Altesse's federal suit and should have been brought in federal court. We need not address the merits of these issues because, even if the TRO was issued in a "flagrantly erroneous manner," Altesse was still required to obey it. *See*

*Green Oaks, Ltd., v. Cannan*, 749 S.W.2d 128, 130 (Tex. App.—San Antonio 1987, writ denied). Only when an order is absolutely void, rather than merely invalid, will a violation be excused. *See Ex parte Browne*, 543 S.W.2d 82, 85–86 (Tex. 1976). Altesse has not challenged the TRO as absolutely void. Thus, even if the trial court erred in rendering the TRO, the error could not be the basis for reversing the trial court's sanctions order and final judgment which is based on Altesse's violations of the TRO.

### D.    TRO Hearing

In its sixth issue, Altesse complains about the absence of a transcript from the hearing on the TRO. It asserts that because the parties never agreed to have a TRO hearing off the record, the court reporter's failure to transcribe the proceedings violated rule 13.1(a) of the Texas Rules of Appellate Procedure. Altesse has not preserved this complaint for review as Altesse does not assert, and it does not appear, that Altesse objected to the failure to record the proceeding. *See* TEX. R. APP. P. 33.1(a). Moreover, there is no indication that an evidentiary hearing was held on the TRO before it was signed. Accordingly, any absence of a record is harmless. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (in pretrial context, reporter's record required only if evidence is introduced in open court; for non-evidentiary hearings, it is superfluous).

**CONCLUSION**

Having overruled all of Altesse's issues, we affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

150906F.P05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALTESSE HEALTHCARE SOLUTIONS, INC. AND SHAWNA BOUDREAUX, Appellants

No. 05-15-00906-CV      V.

ALLEN WILSON AND BECKY WILSON, Appellees

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-04978-2014
Opinion delivered by Justice Evans, Justices Lang-Miers and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Allen Wilson and Becky Wilson recover their costs of this appeal from appellants Altesse Healthcare Solutions, Inc. and Shawna Boudreaux.

Judgment entered this 23rd day of August, 2016.