**AFFIRM; and Opinion Filed June 22, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00028-CV

**SKYLINE COMMERCIAL, INC., Appellant**
**V.**
**ISC ACQUISITION CORPORATION D/B/A ISC BUILDING MATERIALS, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-00305**

## MEMORANDUM OPINION

Before Justices Francis, Brown, and Stoddart
Opinion by Justice Brown

Appellant Skyline Commercial, Inc. (Skyline) appeals from a final judgment rendered on

a jury verdict in favor of appellee ISC Acquisition Corporation d/b/a ISC Building Materials (ISC).

In five issues, Skyline contends there was insufficient evidence to support ISC's quantum meruit

claim and the trial court erred in submitting the quantum meruit claim, distributing peremptory

challenges, refusing to allow Skyline to litigate its counterclaims for attorney's fees as sanctions,

and awarding ISC attorney's fees when there was no presentment or proper segregation of claims.

For the following reasons, we affirm the trial court's final judgment.

BACKGROUND

During 2013, Skyline was general contractor on the Vistas at San Marcos (Vistas), a

student housing construction project. Norwegian Drywall America, LLC (Norwegian) was one of

Skyline's subcontractors on the project and contracted to "[p]rovide all necessary labor, materials and equipment to complete the Drywall Scope, in its entirety." Norwegian ordered some of the drywall materials for Vistas from ISC, a building materials supplier, pursuant to a 2012 credit application.

Norwegian had trouble meeting its obligations under its contract with Skyline. On March 29, 2013, Skyline sent Norwegian a "forty-eight (48) hours notice" letter pursuant to their contract, advising that Norwegian was behind schedule and needed to timely rectify the situation. The following month, as ISC began to supply drywall materials for Vistas, Skyline requested information from ISC about setting up joint check payments for the materials. According to Skyline owner Steven Haug, there was no joint checking agreement between Skyline and ISC. However, Skyline had reached a point where it was "cautious" about sending payment to Norwegian only and wanted to protect the supplier. Thereafter, Skyline issued joint checks payable to both Norwegian and ISC.

On May 21, 2013, Haug met with Norwegian's owner Roy Finney, labor coordinator Frank Saucedo, and foreman James Saucedo to discuss Norwegian's progress on Vistas. Frank and James related that they did not have enough manpower to meet the drywall deadline on the project's two buildings. According to Haug, they agreed that Norwegian would finish the first building, where some drywall work remained, and he would hire another drywall subcontractor to work on the second building, where drywall work had yet to begin. Haug testified that Finney's only reaction was, "You're going to do what you're going to do."

In light of their discussion, Haug sent Norwegian a second forty-eight-hour notice on May 23. A week later, Frank called Haug to advise that Finney did not have the money and was not going to pay Norwegian's crew anymore. Haug testified he had two options under the contract – either to terminate Norwegian or to supplement, meaning to provide the labor and materials

Skyline deemed necessary and deduct the costs from amounts owed under the contract. Haug called Finney, who said, "That's it, we're done, we're gone." Haug then informed Frank that Skyline would be covering payroll for the work. Haug said he did not hire Frank, or anyone else on the crew, to be a Skyline employee.

Frank also testified about his discussions with Haug. According to Frank, he told Haug the crew needed to be paid or he would have to "pull them out." In response, Haug said, ". . . I'm the gentleman that's paying the bills, keep it going." Frank testified that, "at that point, we started working for Skyline." Frank told both Finney and Tom Taggart, manager of ISC's Austin supply house, what had transpired.

Thereafter, Frank and a crew completed drywall work on the first building. Frank submitted a weekly payroll request to Skyline, which was paid. He also continued to order materials from ISC. Frank did not remember ever submitting a bill to Skyline for anything other than labor. But, when asked who was responsible for paying for materials, Frank testified, "I talked to [Finney], I had talked to [Taggart], and I had talked to [Haug]. And [Haug] said, 'I'm paying the bill, keep them going.'"

Haug, on the other hand, testified he understood that all of the drywall material required to complete the first building was already inside the building, and a May 30, 2013 Norwegian application for payment indicates that the "scheduled value" for materials for the first building were "completed and stored to date." Haug testified he never told Frank that he would pay for materials and never had any discussions regarding drywall materials until after work on the first building was completed.

Taggart, a primary ISC contact for Norwegian, testified that he understood ISC sold Norwegian materials for Vistas from May through September 2013. He had no reason to think otherwise and, if he did, he would have tried to get a credit agreement with Skyline. Taggart did

–3–

not recall Frank telling him that Norwegian had been terminated from Vistas. The outstanding ISC invoices for Vistas indicated the materials were sold to Norwegian. Taggart contacted Norwegian's Finney to try to collect on the past due amounts. He did not contact Skyline and did not recall Finney ever telling him Skyline bought the materials. But Taggart said ISC's credit department handled accounts receivable, and he would not know what the department was working on unless it brought him in.

Janet Flores, ISC's office manager during the Vistas project, testified that although Norwegian, and not Skyline, was ISC's customer, Skyline paid for the materials by way of joint check issued to Norwegian and ISC. Sue Hill, a Skyline accounts payable employee, contacted Flores to see how much ISC was owed, and Flores provided invoices to Hill. In September 2013, when the June 2013 invoice became ninety-days overdue, Flores became involved in efforts to collect payment. She met with Frank, who had been purchasing the materials. Frank told her Norwegian had been kicked off the job, he was working for Skyline, and he had been ordering materials for Skyline for three months. Frank advised that Skyline was going to pay for the materials and she should call Haug. Flores testified that if anyone had given ISC this information earlier, she would have changed the invoices to reflect that Skyline received the materials.

According to Flores, Haug confirmed that Norwegian was off the job and Skyline was having someone else complete the work. Haug told Flores Skyline would pay for materials Frank ordered and to send Haug the invoices. Flores forwarded the outstanding invoices for June through September 2013, but never received payment. Flores described a conversation with Haug in a November 19, 2013 email to Norwegian, writing that Haug could not understand why Norwegian had continued to order material, but he "finally agreed and said he knows they owed it and would pay . . .." On February 10, 2014, Flores resent the invoices to Skyline at Haug's request, notifying

–4–

him it was her final attempt to collect payment before she was required to forward the matter to ISC's attorney.

Haug confirmed having conversations with Flores but denied saying he would pay for materials ordered after May 2013. He testified that Skyline expected to pay, but only once, for materials used on Vistas. Haug understood that ISC had never been paid but believed Norwegian should pay for the materials.

ISC brought this action against Norwegian and Skyline to recover $66,945.55, the sum owed for the materials it supplied for Vistas from June through September 2013. ISC asserted claims for breach of contract, quantum meruit, and unjust enrichment against both Skyline and Norwegian and a prompt pay violation against Skyline. Skyline pleaded an express-contract affirmative defense to ISC's quantum meruit claim as well as a counterclaim against ISC for sanctions under Texas Rule of Civil Procedure 13 and Texas Civil Practice and Remedies Code chapter 10 and attorney's fees under Texas Rule of Civil Procedure 215.4(b). Skyline also asserted a cross-claim against Norwegian for damages resulting from Skyline's supplementation of Norwegian's work to complete the project, and Norwegian asserted a cross-claim against Skyline for an equitable accounting regarding materials provided by ISC from May 1, 2013. Skyline and Norwegian reached a settlement on their cross-claims during trial. Also during trial, ISC nonsuited all of its claims against Norwegian and the Finneys except for the breach of contract claim.

After hearing the evidence, the jury found that Norwegian failed to comply with its 2012 credit application with ISC, but awarded no damages for the breach. The jury also found in favor of Skyline on ISC's breach of contract and prompt payment claims, but found in favor of ISC on its quantum meruit claim and awarded ISC $66,945.44 as damages, $62,000 in attorney's fees, and $30,000 in contingent appellate attorney's fees.

QUANTUM MERUIT

In its first issue, Skyline maintains it is entitled to judgment notwithstanding the verdict on ISC's quantum meruit claim because, as Skyline asserted in an affirmative defense, an express contract governed the subject matter of the dispute.[1]  Skyline also argues the claim must fail because ISC cannot meet the reasonable notification element of a quantum meruit claim.

We review a trial court's denial of a motion for judgment notwithstanding the verdict under the legal sufficiency standard.  *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). We review questions of law de novo.  *See In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994). Evidence is legally insufficient to support a jury finding if (1) the record discloses a complete absence of evidence of a vital fact, (2) rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) no more than a mere scintilla of evidence is offered to prove a vital fact, or (4) the evidence conclusively establishes the opposite of a vital fact.  *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016) (citations omitted).  We "consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not."  *Id*.  Jurors are the sole judges of the witnesses' credibility and the weight to be given their testimony. *McCullough v. Scarbrough, Medlin & Assocs. Inc.*, 435 S.W.3d 871, 892 (Tex. App.—Dallas 2014, pet. denied).  Legally sufficient evidence supports a jury's finding if there is more than a scintilla of evidence on which a reasonable juror could find the fact to be true.  *Gardiner*, 505 S.W.3d at 613.

---

[1] Under its first issue, Skyline also contends it is entitled to judgment as a matter of law on ISC's breach of contract, prompt payment, and unjust enrichment claims.  Skyline claims the trial court did not limit its judgment to ISC's quantum meruit claim, requiring Skyline to appeal all the claims, including those that were not submitted (unjust enrichment) and those on which Skyline prevailed by jury verdict (breach of contract and prompt payment).  However, we read the trial court's final judgment to enter judgment on the jury's verdict only, which does not require review of the claims on which ISC did not prevail.

Quantum meruit is an equitable and alternative theory of recovery intended to prevent unjust enrichment. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). The law implies a promise to pay for materials furnished or services rendered that are knowingly accepted. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). To recover, a claimant must prove it (1) provided valuable services and/or materials, (2) to the party sought to be charged, (3) which were accepted, used, and enjoyed by that party, (4) under such circumstances as reasonably notified the party that the claimant, in performing, expected to be paid by the party. *Id.*; *Fulgham v. Fischer*, 349 S.W.3d 153, 159 (Tex. App.—Dallas 2011, no pet.).

Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished.[2] *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 737 (Tex. 2018); *Kellogg Brown & Root*, 166 S.W.3d at 740. The express contract bar applies not only when the plaintiff seeks to recover in quantum meruit from the party with whom it expressly contracted, but also when the plaintiff seeks recovery from a third party foreign to the original contract but who benefitted from its performance. *See W&W Oil Co. v. Capps*, 784 S.W.2d 536, 537 (Tex. App.—Tyler 1990, no writ) (citing *Black Lake Pipe Line Co. v. Union Const. Co.*, 538 S.W.2d 80 (Tex. 1976), *overruled on other grounds by Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1985)). The trial court decides, and we review de novo, the legal question of whether an express contract covers the services or materials at issue. *Hill*, 544 S.W.3d at 737; *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 724 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d

---

[2] The Texas Supreme Court has recognized only three exceptions to the general rule that an express contract bars recovery under quantum meruit: (1) a plaintiff partially performs an express contract but is prevented from completing the contract due to the defendant's breach; (2) a plaintiff partially performs an express contract that is unilateral in nature; or (3) a plaintiff breaches a construction contract but the defendant accepts and retains the benefits arising from the plaintiff's partial performance. *See Truly v. Austin*, 744 S.W.2d 934, 936-37 (Tex. 1988). Neither party contends any of these exceptions apply in this case.

54, 70 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "When the evidence shows that no contract covers the service at issue, then the question of whether a party may recover in quantum meruit is for the trier of fact." *Gulf Liquids*, 356 S.W.3d at 70.

*Express Contract*

The 2012 credit application provides the terms and conditions under which Norwegian bought goods from ISC. And, to the extent that Norwegian was purchasing goods from ISC for Norwegian's work on Vistas, the 2012 credit application would preclude ISC from recovering in quantum meruit from either Norwegian or Skyline, as a beneficiary under the application. *See, e.g., W&W Oil Co.*, 784 S.W.2d at 537. However, beginning in June 2013, Norwegian was no longer working on Vistas. Haug testified that Skyline had opted to supplement pursuant to the terms of its contract with Norwegian: "Contractor may, at its option, after the expiration of forty-eight (48) hours written notice to Subcontractor, provide any such labor and materials deemed necessary by the Contractor . . .." In other words, Haug agreed to pay for the manpower and materials to complete the job.

Skyline nevertheless contends ISC's quantum meruit claim must fail as a matter of law because ISC judicially admitted the 2012 credit application covered the materials for which ISC sought recovery, referring to the following paragraph in ISC's response to a motion to transfer venue:

> Plaintiff sold building materials to Defendants [defined as Norwegian and the Finneys only for purposes of ISC's response] in connection with the Vistas at San Marcos project (the "Project") in accordance with a business credit agreement dated February 23, 2012 by and between Plaintiff, as supplier, and Defendants as purchasers. Defendants failed to pay Plaintiff for the materials Plaintiff sold to defendants on the Project. Defendants still owe Plaintiff $66,945.55 for materials sold to Defendants on the Project.

A party, however, may not judicially admit a question of law. *Cohen v. Tour Partners, Ltd.*, No. 01-15-00705-CV, 2017 WL 1528776, at *5 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, no pet.); *Jackson v. Texas S. Univ.-Thurgood Marshall Sch. Of Law*, 231 S.W.3d 437, 440 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.); *Fort Bend Cent. Appraisal Dist. v. Hines Wholesale Nurseries*, 844 S.W.2d 857, 858-59 (Tex. App.—Texarkana 1992, writ denied). Because the trial court must decide the legal question of whether an express contract covers the services or materials at issue, *see Christus Health*, 359 S.W.3d at 724; *Gulf Liquids*, 356 S.W.3d at 70, ISC cannot have judicially admitted the matter.

Skyline next contends that the jury, in answering "yes" to the question asking whether Norwegian failed to comply with the 2012 credit application, necessarily found the materials at issue were sold subject to that application and, in doing so, conclusively established Skyline's express-contract affirmative defense to ISC's quantum meruit claim. Again, whether the 2012 credit application covered the ISC materials sold from June through September 2013 was a question of law for the trial court.

Skyline appears to be asserting the jury's "yes" answer to the question on Norwegian's breach of contract conflicts with the jury's "yes" answer to the quantum meruit question. However, a party complaining of conflicting jury findings must object before the jury is discharged. *Dick's Last Report of the West End., Inc. v. Market/Ross, Ltd.*, 273 S.W.3d 905, 918 (Tex. App.—Dallas 2008, pet. denied); *see also Fleet v. Fleet*, 711 S.W.2d 1, 3 (Tex. 1986); Tex. R. App. P. 33.1(a). The party must raise an objection before the verdict is received so the trial court can "provide the jury such additional instructions as may be proper, and retire the jury for further deliberations." Tex. R. Civ. P. 295; *Beltran v. Brookshire Grocery Co.*, 358 S.W.3d 263,

268 (Tex. App.—Dallas 2011, pet. denied). Skyline did not complain of any purported conflict in the findings prior to the jury's discharge.

Finally, Skyline argues documentary evidence conclusively establishes the 2012 credit application covers the materials, showing:

> (1) the materials were delivered to Norwegian's job site;
>
> (2) ISC sent invoices to Norwegian at the time of the materials' sales;
>
> (3) Norwegian did not send written notice refusing the sales; and
>
> (4) the 2012 credit application provides that materials delivered to Norwegian's job site and not refused in writing are accepted by Norwegian.

But Haug's testimony established by the time the materials were ordered, Norwegian had already stopped work on the project and Skyline had exercised its option to supplement. Frank was running a crew on Skyline's behalf, with Skyline covering the payroll, and ordered additional drywall materials from ISC to finish the work. The fact that ISC unwittingly sent invoices to Norwegian does not render Norwegian the "buyer" of those materials under the 2012 credit application.

We conclude the trial court properly determined the 2012 credit application did not constitute an express contract covering materials furnished in connection with Vistas from June through September 2013 and, accordingly, Skyline was not entitled to judgment as a matter of law on its express-contract affirmative defense.

*Reasonable Notice*

Skyline next contends that it is entitled to judgment on ISC's quantum meruit claim because "[t]here was no reasonable notification that ISC expected Skyline to be directly responsible to pay ISC for its materials" at the time of the materials' delivery. Relying on *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992), Skyline maintains ISC cannot prevail on its claim because the evidence shows both ISC and Skyline believed

–10–

Norwegian was directly responsible for purchasing the drywall materials and, therefore, there could be no expectation of Skyline's direct payment for the materials at the time the materials were delivered.

The reasonable notice element of a quantum meruit claim requires that the materials were furnished and accepted "under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, was expecting to be paid by him." *Vortt Exploration Co.*, 787 S.W.2d at 944. In *Heldenfels*, a city contractor hired a subcontractor, which constructed and delivered concrete T-beams for a recreation center. *Id.* at 40. A city inspector noticed cracks in the T-beams, and the City retained a portion of its payment to the contractor. *Id.* Reports later established the T-beams were not defective, but the contractor abandoned the project and did not pay the subcontractor. *Id.* The subcontractor sued the City for payment. *Id.* At trial, the subcontractor's representative testified he would be "greatly surprised" if the City was not aware of the subcontractor's expectation of payment before the subcontractor began work and it was normal to approach an owner for payment when a contractor did not pay. *Id.* at 41. The supreme court determined that the testimony constituted no evidence the subcontractor had notified the City the subcontractor anticipated payment from the City before delivering the T-beams and, consequently, the subcontractor's quantum meruit claim failed as a matter of law. *Id.*

This case is distinguishable from *Heldenfels* because ISC seeks payment for materials it delivered to the job site after Norwegian left the project and Skyline had taken control over completion of the first building. By the end of May, Haug knew Norwegian was no longer on site and specifically told Frank to keep the project going. Thus, Frank, working at the behest of and being paid by Skyline, ordered additional materials and understood that Haug was "paying the bills." Although Haug testified that no one at Skyline was aware that the materials has been ordered or accepted delivery of the materials, the jury resolved any conflicts in the evidence.

–11–

Further, it is irrelevant whether ISC knew Frank was ordering the materials on behalf of Skyline or that Norwegian was no longer working on Vistas at the time. The notice element focuses on what Skyline, not ISC, knew or should have known at the time Skyline accepted the materials. *See Tricon Tool & Supply, Inc. v. Thurmann*, 226 S.W.3d 494, 504 (Tex. App.— Houston [1st Dist.] 2006, pet. denied) (citing *Heldenfels*, 832 S.W.2d at 41). And, in any event, the jury heard evidence of an existing course of contact between the parties, which included Skyline paying ISC's invoices by way of joint check issued to Norwegian and ISC,[3] Skyline contacting Flores to see how much ISC was owed, and Flores providing invoices to Skyline. Thus, we conclude there is more than a scintilla of evidence to support the jury's finding that, when the materials were delivered, Skyline accepted those materials under such circumstances as reasonably notified it that ISC would expect Skyline to pay for the materials.

Because legally sufficient evidence supports the jury's finding on ISC's quantum meruit claim, Skyline was not entitled to judgment notwithstanding the verdict. We overrule Skyline's first issue.

JURY CHARGE

In its second issue, Skyline alternatively argues the trial court erred in submitting the quantum meruit claim to the jury. Specifically, Skyline complains the trial court submitted an improper instruction of "compensable work" because the instruction did not specify that Skyline had to be reasonably notified of ISC's expectation of compensation "at the time of the materials' delivery" and refused to submit a jury question on its express-contract affirmative defense.

---

[3] Skyline cites two federal cases and a New Jersey case for the proposition that payment by a joint check is "no evidence of an expectation of *direct payment* from the general contractor." Those cases do not address whether a history of receiving payment by joint check can be some evidence of expectation of future payments, but instead discuss whether joint checking arrangements constitute "direct contractual relationships" or "direct contracts" in the context of statutes designed to protect material suppliers and others from a general contractor's insolvency. *See United States ex rel. Light & Power Utils. Corp. v. Liles Constr. Co.*, 440 F.2d 474, 478 (5th Cir. 1971); *United States ex rel. State Elec. Supply Co v. Hesselden Constr. Co.*, 404 F.2d 774, 777 (10th Cir. 1968); *Dial Block Co. v. Mastro Masonry Contractors*, 863 A.2d 373, 378-79 (N.J. Super. Ct. App. Div. 2004).

A trial court must submit "instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277; *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex. 1997). A proper instruction assists the jury, accurately states the law, and has support in the pleadings and evidence. *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 221 (Tex. 2010).

A trial court must submit questions raised by the written pleadings and the evidence. TEX. R. CIV. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). A jury question is immaterial "when it should not have been submitted, it calls for a finding beyond the province of the jury, such as a question of law, or when it was properly submitted but has been rendered immaterial by other findings." *Southeastern Pipe Line Co., Inc. v. Tiachacek*, 997 S.W.2d 166, 172 (Tex. 1999); *Billy Smith Enters., Inc. v Hutchison Const., Inc.*, 261 S.W.3d 370, 374 (Tex. App.—Austin 2008, pet. dism'd).

We review de novo whether an instruction or definition is legally incorrect. *Crump*, 330 S.W.3d at 221. If a charge is legally correct, the trial court has broad discretion in submitting questions, instructions and definitions. *Hyundai Motor Co v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). We reverse a judgment for charge error only if the error was harmful, meaning the error "probably caused the rendition of an improper verdict." *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012).

Here, the trial court's jury charge included the following quantum meruit question and instruction:

> Did [ISC] perform compensable work for Skyline for which [ISC] was not compensated?
>
> [ISC] performed compensable work if it rendered valuable services or furnished valuable materials to Skyline; Skyline accepted, used, and benefited from the services or materials; and, under the circumstances, Skyline was reasonably notified that [ISC] expected to be compensated by Skyline for the services or materials.

The four elements of quantum meruit, as properly submitted in the jury charge in this case, are (1) valuable services were rendered (2) to the party sought to be charged (3) which services were accepted by the party sought to be charged (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing such services, expected to be paid by the recipient. *Collins & Aikman Floorcoverings, Inc. v. Thomason*, 256 S.W.3d 402, 408 (Tex. App.—San Antonio 2008, pet. denied) (citations omitted). The trial court's instruction on compensable work is based on the long-accepted definition set forth by the supreme court in *Heldenfels* and tracks the relevant Texas Pattern Jury Charge. *Id.* (citing *Heldenfels*, 832 S.W.2d at 41); *Brender v. Sanders Plumbing, Inc.*, No. 2-05-067-CV, 2006 WL 2034244, at *3 (Tex. App.—Fort Worth Jul. 20, 2006, pet. denied); *Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment* PJC 101.42 (2014).[4] And, a trial court should not embellish well-settled pattern jury charges with addendum. *Walker & Assocs. Surveying, Inc. v. Roberts,* 306 S.W.3d 839, 859 (Tex. App.—Texarkana 2010, no pet.). Accordingly, we conclude the trial court's submission of the quantum meruit question and, specifically, the compensable work instruction was not error.[5]

Skyline next argues that the trial court erred in not submitting a jury question on its express-contract affirmative defense. Specifically, Skyline argues the trial court should have submitted a question asking if the 2012 credit application covered the sale of the materials at issue. Skyline cites *Fortune Production Co v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000), as support, asserting a defendant must secure findings on an express-contract affirmative defense. In *Fortune*, the trial court rendered judgment on a jury verdict for plaintiff natural-gas producers on their unjust

---

[4] "Although the Texas Pattern Jury Charges are not 'law,' they are heavily relied upon by bench and bar and based on what the State Bar Committee perceives the present law to be." *THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 569 (Tex. App.—Amarillo 2010, pet. denied); *Shelby Distributions, Inc. v. Reta*, 441 S.W.3d 715, 720 (Tex. App.—El Paso 2014, no pet.).

[5] Although Skyline objected to the instruction during the charge conference because it used the word "expected" instead of "expecting," Skyline's Second Amended Proposed Charge of the Court, like the trial court's charge, used the word "expected." *See* TEX. R. CIV. P. 278 ("Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment."); *Lundy v. Masson*, 260 S.W.3d 482, 502-03 (Tex. App.—Houston [1ˢᵗ Dist.] 2008, pet. denied).

enrichment claims, and the court of appeals affirmed, holding that defendant Conoco had waived its express-contract defense to the claims by failing to secure a jury finding that the parties' contracts governed the treatment of field liquids at issue in the case. *Fortune*, 52 S.W.3d at 675-76, 683. The supreme court disagreed in part, holding Conoco had no obligation to obtain findings related to contracts with three of the plaintiffs because the contracts Conoco had with those plaintiffs were written, admitted into evidence, and unambiguously covered the subject matter of the dispute. *Id*. at 683. "Under [those] circumstances, there was no issue for the jury to decide. The effect of the written contracts on claims for unjust enrichment is one of law." *Id.* However, because there was no evidence reflecting the terms of Conoco's arrangement with two other plaintiffs with whom Conoco did not have enforceable contracts, the court held "[w]hen the existence of or the terms of a contract are in doubt, and there is a claim for unjust enrichment, it is incumbent on the party disputing that claim to secure findings from the trial court that an express contract exists that covers the subject matter of the dispute." *Id*. at 685.

Here, the terms of the 2012 credit agreement are not in doubt. Whether that agreement covers the materials used in Vistas from June through September 2013 involves a determination of law, and "[a]n issue that involves the determination of a matter of law should not be submitted to the jury." *UMLIC VP LLC v. T&M Sales & Envtl. Sys., Inc*., 176 S.W.3d 595, 608 (Tex. App.—Corpus Christi 2005, pet denied). Therefore, the trial court did not err in refusing to submit a jury question on Skyline's defense of express contract. *See, e.g., Hester v. Friedkin Cos., Inc.*, 132 S.W.3d 100, 107 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

We overrule Skyline's second issue.

### PEREMPTORY CHALLENGES

In its third issue, Skyline contends remand for a new trial is required due to the trial court's inequitable distribution of peremptory challenges. The trial court granted ISC six peremptory

challenges, but granted Norwegian and Skyline four peremptory challenges each. Skyline asserts it was prejudiced by this error because the evidence at trial was sharply conflicting and the jury's verdict was not unanimous.

Generally, parties in civil actions are entitled to six peremptory challenges each. TEX. R. CIV. P. 233. In a case with multiple parties on the same side of a docket, the number of challenges may be different. *Id.* The trial court must determine if any parties aligned on the same side of the docket are antagonistic with respect to any issue of fact the jury is to decide. TEX. R. CIV. P. 233; *Garcia v. Centennial Power & Light Co.*, 704 S.W.2d 734, 738 (Tex. 1986); *Holland v. Lovelace*, 352 S.W.3d 777, 787 (Tex. App.—Dallas 2011, pet. denied). In the event of antagonism, and upon a timely motion, the trial court must equalize the number of peremptory challenges "so that no litigant or side is given unfair advantage as a result of the alignment of the litigants and the award of peremptory challenges to each litigant or side." TEX. R. CIV. P. 233. The trial court's goal is not to give each side the same number of strikes, but to prevent one side, comprised of parties who are adverse on certain matters yet generally united against the other side, from controlling jury selection. *See Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 920 (Tex. 1979).

We review whether the trial court's allocation of peremptory challenges created an unfair advantage amounting to an abuse of discretion. *Id.* at 920. We leave the nature and degree of the antagonism and its effect on the number of strikes allocated to each side or litigant to the trial court's discretion, but that discretion is not unlimited. *Webster v. Lipsey*, 787 S.W.2d 631, 638 (Tex. App.—Houston [14th Dist.] 1990, writ denied.). In *Dunn*, the Texas Supreme Court noted that a disparity of two-to-one was generally acceptable and "approach[ing] the maximum disparity allowable," and specifically concluded a disparity of four-to-one constituted an abuse of discretion. *Dunn*, 592 S.W.2d at 920. In the event of an abuse of discretion, we must decide whether the allocation of peremptory challenges was materially unfair. *Id.*; *Garcia*, 704 S.W.2d at 737.

Generally, a showing that a trial was hotly contested with sharply conflicting evidence is sufficient to indicate error from improper allocation of peremptory challenges resulted in a materially unfair trial. *Dunn*, 592 S.W.2d at 921.

Skyline and Norwegian moved for equalization of peremptory challenges on the basis of antagonism arising from their cross-claims against each other and requested six challenges each. In doing so, Skyline's counsel noted there were no strikes for cause and stated, ". . . I would say as a practical matter it is going to be fine." The trial court granted the motions for equalization, but denied the requests for six challenges and granted Skyline and Norwegian four challenges each instead.

That two co-defendants are antagonistic does not require that each receive six peremptory challenges. *Pojar v. Cifre*, 199 S.W.3d 317, 330 (Tex. App.—Corpus Christi 2006, pet. denied). The trial court has discretion to assign the number of challenges to promote the ends of justice and eliminate any unequal advantage. *Dunn*, 592 S.W.2d at 920; *Pojar*, 199 S.W.3d at 330. Here, the disparity between the co-defendants (Skyline and Norwegian) and ISC was less than two-to-one, and the disparity between Norwegian and ISC (whom Skyline alleges were aligned together against it) and Skyline was two-and-one-half-to-one. And, of course, there was antagonism between ISC and Norwegian as well. Examining the nature and degree of antagonism and its effect on the number of strikes allocated to each side or litigant, including the fact that there were no strikes for cause and Skyline anticipated it was "going to be fine," we conclude the trial court did not abuse its discretion in allocating peremptory challenges. *See, e.g., Pojar*, 199 S.W.3d at 330. Accordingly, we overrule Skyline's third issue.

SANCTIONS

In its fourth issue, Skyline asserts it is entitled to remand on its counterclaims for attorney's fees as "a sanction for ISC's frivolous, bad faith, groundless pleadings" under Texas Rule of Civil

Procedure 13 and Texas Civil Practice and Remedies Code chapter 10 and for failure "to wholly admit" in response to several requests for admission under Texas Rule of Civil Procedure 215.4(b). *See* TEX. RS. CIV. P. 13, 215.4; TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001, 10.002 (West 2017). Skyline complained that ISC (1) failed to plead or prove any statute of frauds exception despite basing its breach of contract and prompt payment claims on an oral agreement; (2) pursued its quantum meruit claim despite there being a valid, express contract covering the subject matter of the parties' dispute; (3) made false allegations in pleadings and responses to requests for admissions that the evidence contradicted; (4) failed to timely identify a relevant person of knowledge; and (5) offered false testimony by ISC's attorney regarding whether attorneys considered requesting depositions "to provide incentive to Skyline to participate in mediation." During the charge conference, Skyline objected to the trial court's refusal to include twelve jury questions regarding ISC's responses to different requests for admission. Following trial, Skyline filed a motion for sanctions, which the trial court denied.

Neither rule 13, chapter 10, nor rule 215.4 establish an independent cause of action for damages; rather, they provide a basis for a trial court to impose sanctions or attorney's fees upon motion or the court's own initiative. TEX. R. CIV. P. 13 ("the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction . . ."); TEX. CIV. PRAC. & REM. CODE ANN. § 10.002 (authorizing a party to "make a motion for sanctions"); TEX. R. CIV. P. 215.4 ("A party . . . may move to determine the sufficiency of the answer" to a request for admission); *see also Mantri v. Bergman*, 153 S.W.3d 715, 717-18 (Tex. App.—Dallas 2005, pet. denied); *Guardian Transfer & Storage Inc. v. Behrndt*, No. 14-14-00635-CV, 2016 WL 1267911, at * 7 (Tex. App.—Houston [14th Dist.] Mar. 31, 2016, no pet.); *Guidry v. Envtl. Procedures, Inc.*, 388 S.W.3d 845, 860 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Michels v. Zeifman*, No. 03-08-00287-CV, 2009 WL 349167, at *4 (Tex. App.—Austin Feb. 12, 2009, pet. denied)

(mem. op.); *see also Neely v. Comm'n for Lawyer Discipline*, 976 S.W.2d 824, 827-28 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("There is no right to a trial by jury on the issue of whether rule 13 has been violated."). Skyline identifies no authority under which the asserted actions can be the basis for a statutory or common-law cause of action. Therefore, we conclude the trial court did not err in either denying the counterclaims for sanctions and attorney's fees or not submitting any issues related to the counterclaims for sanctions and attorney's fees to the jury. *See Guardian Transfer & Storage*, 2016 WL 1267911, at *7. Accordingly, we overrule Skyline's fourth point of error.

ATTORNEY'S FEES

In its fifth issue, Skyline maintains the trial court erred in awarding attorney's fees to ISC because ISC failed to present its claim to Skyline. Skyline also contends there is legally insufficient evidence of segregation of attorney's fees related to ISC's quantum meruit claim from the fees related to ISC's other claims and Skyline's claims for sanctions.

A party seeking to recover attorney's fees must present its claim by making a demand or request for payment or performance to the opposing party or that party's agent. TEX. CIV. PRAC. & REM. CODE ANN. § 38.002(2) (West 2015); *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981). No particular form of presentment is required; it is a means to provide the opposing party with an opportunity to pay the claim before incurring an obligation for attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.005 (West 2017) (requiring liberal construction of chapter 38); *France v. Am. Indem. Co.*, 648 S.W.2d 283, 286 (Tex. 1983); *Jones*, 614 S.W.2d at 100. "[A]ll that is necessary is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim." *Standard Constructors, Inc. v. Chevron Chem. Co.*, 101 S.W.3d 619, 627 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Flores testified that she spoke with Haug in November 2013 seeking payment for the drywall materials, sent all of the outstanding invoices to Skyline, and never received payment. The record also includes (1) Flores's February 10, 2014 email to Haug, thanking him for talking to her and noting she had re-sent the list of invoices, Hill had copies of all the invoices with the proof of deliveries, and the email was her final attempt to collect payment before she had to send the matter to an attorney, and (2) a June 6, 2014 demand letter from ISC's attorney to Skyline seeking payment of $66,945.55 for the drywall materials ISC supplied during June through September 2013. We conclude the record contains sufficient evidence of ISC's presenting its claim to Skyline for purposes of section 38.002. *See, e.g., Exxon Corp. v. Breezevale*, 82 S.W.3d 429, 442 (Tex. App.—Dallas 2002, pet. denied).

Generally, a party seeking to recover attorney fees must segregate the fees between claims for which fees are recoverable and claims for which they are not. *A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006)). However, to the extent services "would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service." *Chapa*, 212 S.W.3d at 313. If legal services advance both recoverable and unrecoverable claims, then the services are so intertwined that the fees need not be segregated. *Beyer*, 235 S.W.3d 710. Whether attorney's fees require segregation is a question of law. *Chapa*, 212 S.W.3d at 312; *CA Partners v. Spears*, 274 S.W.3d 51, 81 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Here, ISC asserted claims against Skyline for breach of contract, quantum meruit, unjust enrichment, and a prompt payment violation. Although ISC prevailed on only the quantum meruit claim, each of its claims was premised on the same allegation that Skyline was responsible for paying the $66,945.55 owed for the drywall materials used in Vistas and ISC was damaged by Skyline's failure to pay. And, in defending against each of these claims, Skyline sought to disprove

that it was liable for paying the costs, either because it had not agreed to pay or had no reasonable notification that it was expected to pay. The claims were so intertwined that their prosecution entailed essentially the same work and proof. Because the prosecution of ISC's claims essentially involved the same work and proof related to recovery of one particular debt, we conclude it was not required to segregate its attorney's fees. *See, e.g.*, *Varnado v. R & D Marble, Inc.*, No. 09-12-00114-CV, 2013 WL 5874095, at \*5 (Tex. App.—Beaumont Oct. 31, 2013, no pet.) (mem. op.) (segregation not required when recoverable claim for sworn account/breach of contract and unrecoverable claim for quantum meruit and unjust enrichment were intertwined). Accordingly, we overrule Skyline's fifth issue.

We affirm the trial court's judgment.


/Ada Brown/
ADA BROWN
JUSTICE


170028F.P05

–21–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SKYLINE COMMERCIAL, INC.,
Appellant

No. 05-17-00028-CV     V.

ISC ACQUISITION CORPORATION
D/B/A ISC BUILDING MATERIALS,
Appellee

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-00305.
Opinion delivered by Justice Brown;
Justices Francis and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ISC ACQUISITION CORPORATION D/B/A ISC BUILDING MATERIALS recover its costs of this appeal from appellant SKYLINE COMMERCIAL, INC.


Judgment entered this 22nd day of June, 2018.